# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| DEIDRE ROBERTSON, ) <br> ) <br> Plaintiff, ) <br> v. ) <br> ) <br> SUSAN LOFTON, in her individual and official ) <br> capacities; CHICAGO PUBLIC SCHOOLS, ) <br> ) <br> Defendants. ) | Case No. 13 C 3205 <br><br> Judge Joan B. Gottschall |

## MEMORANDUM OPINION & ORDER

Plaintiff Deidre Robertson filed a nine-count First Amended Complaint against Defendants Susan Lofton, principal at Nicholas Senn High School ("Senn"), and Chicago Public Schools ("CPS"). She alleges that the defendants violated her civil rights under the Fourteenth Amendment, Title VII, and the Civil Rights Act of 1971, and also asserts various state-law claims. Now before the court is the defendants' motion to dismiss Counts II, VI, VII, VIII, and IX of the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) and motion for a more definite statement pursuant to Rule 12(e) as to the remaining counts. For the reasons explained below, the motion to dismiss is granted as to Counts VI (without prejudice), VII (with prejudice), and IX (with prejudice against the Board and without prejudice against Lofton). The motion to dismiss is denied as to Counts II and VIII. All claims against Lofton in her official capacity are dismissed, and Count I is dismissed against Lofton in her individual capacity. The court also dismisses Count V with prejudice. The motion for a more definite statement is denied as moot, based on Robertson's representation that she plans to file an amended complaint to clarify her allegations.

# I. BACKGROUND

The court accepts the facts alleged in the complaint as true for purposes of the motion to dismiss. Robertson, an African American woman, was employed as a high school English teacher at Senn until July 2011. She was involved in a brief altercation with a student on October 2, 2010. The student was restrained by several individuals and suffered mild abrasions on her arms. A security guard removed the student from the scene. According to the complaint, no eyewitness accounts or video footage suggested that Robertson touched the student.

According to Robertson, Lofton did not contact the Department of Children and Family Services ("DCFS") about the incident, although the student had been involved in several incidents with school personnel, and Robertson alleges that Lofton, as a mandated reporter, "had a duty to report any suspected child abuse." (First Am. Compl. ¶ 60, ECF No. 1.)[1] The school nurse reported the incident to DCFS, as did the Vice Principal. Robertson also initiated contact with DCFS herself. DCFS investigated the incident and notified Robertson that there was no evidence of abuse.

As a result of the incident and "the fabrications that followed," Robertson was suspended and issued a warning resolution, adopted by the Board of Education of the City of Chicago, stating that she had engaged in unsatisfactory conduct. (*Id.* at ¶ 37.) Lofton did not provide copies of any official reports about the incident to Robertson at the time they were placed in Robertson's personnel file. The complaint alleges that reports were placed in Robertson's file several months after the incident. Although the complaint does not clearly allege what the reports were, attached as an exhibit is an "Investigative Memorandum" dated October 19, 2010,

---

[1] As far as the court can tell, the relevance of this allegation is that, according to Robertson, if Lofton truly believed that Robertson had abused the student, she should have contacted DCFS.

which concludes that credible evidence supported the allegation that Robertson grabbed the student's arm. (First Am. Compl. Ex. O, ECF No. 17-2.)

In July 2011, Robertson received a letter stating that she had been removed from her full-time teaching position and placed into the Reassigned Teacher Pool, due to a "lack of enrollment" at Senn. (First Am Compl. ¶ 67.) Teachers in the Reassigned Teacher Pool have "minimal expectations for continued employment with [CPS]." (*Id.* at ¶ 68.) According to the complaint, no such lack of enrollment occurred, and Senn in fact hired new teachers in 2011 and 2012.

Robertson filed suit against Lofton and CPS in the Circuit Court of Cook County. Her initial pro se complaint was filed in August 2012. After the state court gave her leave to amend her complaint, she filed a nine-count First Amended Complaint on January 28, 2013. Defendants removed the action to this court on the basis of federal question jurisdiction on April 29, 2013.

In her First Amended Complaint, Robertson brings five federal claims. In Count I, she alleges that she was unfairly disciplined on the basis of her race, in violation of Title VII, 42 U.S.C. § 2000e *et seq.*, and the Illinois Human Rights Act ("IHRA"), when she was placed in the Reassigned Teacher Pool and when she was accused of child abuse, issued a warning resolution, and subjected to inaccurate recordkeeping, which were "used to keep her from obtaining a position with [CPS]." (*Id.* at ¶ 71.) She claims that Lofton ignored severe disciplinary infractions by other staff "while disciplining Robertson for a supposed inability to maintain discipline without resorting to security." (*Id.* at ¶ 73.) She further alleges that other members of protected classes employed at Senn suffered similar discriminatory termination or discipline.

In Count II, Robertson claims that the defendants violated 42 U.S.C. § 1981 by discriminating against her based on her race. In Count III, Robertson alleges that she was deprived of a protected property interest in her position as a tenured teacher at Senn without procedural due process, in violation of the Fourteenth Amendment. She also claims that she had a liberty interest in her occupation as a teacher and counselor and was stigmatized by the conduct of Lofton and CPS, and that she has subsequently suffered repeated denials of employment as a result of the information published by Lofton and CPS. In Count IV, Robertson claims that she was deprived of substantive due process, in violation of the Fourteenth Amendment, because she "received a warning resolution which permanently forecloses [her] ability to earn a living" in her profession as a teacher. Finally, in Count V, Robertson brings a "class of one" claim, arguing that she was intentionally singled out for differential treatment without a rational basis, in violation of the Fourteenth Amendment.

Robertson also brings four state-law claims. In Count VI, she claims that she received a warning resolution in violation of the Illinois Personnel Records Review Act ("IPRRA"), 820 Ill. Comp. Stat. 40/13. In Count VII, Robertson claims tortious interference with contractual relations, in violation of Illinois law. In Count VIII, Robertson alleges that CPS negligently supervised Lofton, in violation of state law, including by failing to verify Lofton's accusations against Robertson prior to the adoption of a warning resolution. And in Count IX, Robertson claims defamation, in violation of state law, based on Lofton's false reports "that Robertson was derelict in her teaching duties and that Robertson was an unsatisfactory teacher," along with anonymous comments Lofton caused to be published which stated that Robertson was unable to "perform her role as a teacher" and "had committed acts of child abuse." (*Id.* at ¶¶ 107-08.)

4

Robertson alleges that these statements were made with malicious intent and "are not privileged." (*Id.* at ¶ 109.)

## II. LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a complaint must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A motion to dismiss should be granted if the plaintiff fails to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The factual allegations in a complaint must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555-56; *see also Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010) ("[P]laintiff must give enough details about the subject-matter of the case to present a story that holds together."). For purposes of a motion to dismiss, the court takes all facts alleged in the complaint as true and draws all reasonable inferences from those facts in the plaintiff's favor, although conclusory allegations that merely recite the elements of a claim are not entitled to this presumption of truth. *Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011). A plaintiff may "plead [herself] out of court" if she would have to contradict her own complaint in order to prevail on the merits of her case, and the defendant may use unnecessarily pleaded facts "to demonstrate that she is not entitled to relief." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1086 (7th Cir. 2008).

## III. ANALYSIS

### A. Claims against CPS and Lofton in Her Official Capacity

The defendants first ask the court to dismiss CPS as a defendant because it is not a legal entity. The court agrees that the proper defendant in this is case is the Board of Education of the City of Chicago ("the Board"), which filed the motion to dismiss on the defendants' behalf. *See*

*Douglas v. Lofton*, No. 12 C 8592, 2013 WL 2156053, at *1 n.1 (N.D. Ill. May 17, 2013). Robertson is accordingly directed to amend her complaint to name the Board as the proper defendant. So as to guide Robertson should she choose to amend her complaint, in what follows, the court addresses the counts in the complaint as though they were alleged against the Board.

The defendants further argue that the official capacity claims against Lofton and the claims against the Board are redundant. The defendants are correct, and the claims against Lofton in her official capacity are dismissed. *See, e.g.*, *Jungels v. Pierce*, 825 F.2d 1127, 1129 (7th Cir. 1987) (explaining that "nothing was added" by suing a mayor in his official capacity along with the city); *Brown v. Chi. Bd. of Educ.*, No. 12 C 1112, 2013 WL 5376570, at *3 (N.D. Ill. Sept. 25, 2013) (by naming a principal and CPS's CEO "in their official capacities and also naming the Board, the complaint is really suing the Board of Education thrice over").

### B. Title VII and IHRA Claims against Lofton (Count I)

Defendants argue that Count I must be dismissed against Lofton in her individual capacity, because Title VII and the IHRA do not impose individual liability on supervisors who are not the plaintiff's employer. Robertson does not argue otherwise, instead contending that Lofton was named in her official capacity in Count I. The court agrees with the defendants that Lofton is not a proper defendant in Count I. Courts in this district have dismissed similar claims against supervisors in their individual capacities. *See, e.g.*, *Zayadeen v. Abbott Molecular, Inc.*, No. 10 C 4621, 2013 WL 361726, at *5 (N.D. Ill. Jan. 30, 2013) ("[Section] 1981 provides for individual liability while Title VII and the IHRA do not."); *Washington v. Univ. of Ill. at Chi.*, No. 09 C 5691, 2010 WL 1417000, at *3 (N.D. Ill. Apr. 2, 2010). Count I is therefore dismissed insofar is it asserts a claim against Lofton in her individual capacity.

## C. Section 1981 Claim (Count II)

The defendants argue that Count II fails to state a plausible claim under § 1981, because Robertson has not included facts in that section of the complaint sufficient to allege such a claim. Under Count II, Robertson states only that Lofton's actions deprived her of rights under a contract, and that "Lofton was motivated by a discriminatory animus towards African American women." (First Am. Compl. at ¶ 79.) The court reads the complaint in its entirety, however. *See, e.g.*, *O'Donnell v. City of Country Club Hills*, No. 12 C 3523, 2013 WL 5289522, at *5 (N.D. Ill. Sept. 18, 2013); *In re Rough Rice Commodity Litig.*, No. 11 C 0618, 2013 WL 214164, at *4 (N.D. Ill. Jan. 16, 2013); *Cahn v. City of Highland Park*, No. 11 C 6082, 2012 WL 917855, at *3 (N.D. Ill. Mar. 14, 2012) (all emphasizing that the court reads the complaint in its "entirety" when considering the viability of a claim).

The analytical framework from Title VII applies to § 1981 claims. *McGowan v. Deere & Co.*, 581 F.3d 575, 579 (7th Cir. 2009). "Section 1981, however, is limited in scope to discrimination on the grounds of race in the 'mak[ing] and enforc[ing] [of] contracts.'" *Thanongsihn v. Bd. of Educ.*, 462 F.3d 762, 782 (7th Cir. 2006) (quoting 42 U.S.C. § 1981(a)) (alterations in original). Robertson's Title VII claim in Count I states a claim against the Board; the Board does not argue otherwise. It follows that Robertson's § 1981 claim is also sufficient to survive a motion to dismiss, as it rests on the same allegations of discrimination as the Title VII claim, along with the fact that Robertson's employment by the Board was governed by contract. *See id.* at 783 ("[I]f a jury finds in [plaintiff's] favor on his Title VII claim, it also could conclude that, but for the defendants' actions, . . . no change in his contractual relationship with the School District . . . would have occurred."). The motion to dismiss is therefore denied as to Count II.

### D. Class-of-One Equal Protection Claim (Count V)

In Count V, Robertson argues that she was intentionally singled out for differential treatment without a rational basis, in violation of the Fourteenth Amendment. The Supreme Court held in *Engquist v. Oregon Department of Agriculture*, 553 U.S. 591, 598 (2009), that "the class-of-one theory of equal protection does not apply in the public employment context." Count V is therefore dismissed.

### E. Illinois Personnel Records Review Act (Count VI)

In Count VI, Robertson alleges that the defendants violated the IPRRA, although this section of the complaint does not explain how the violation occurred. The defendants argue that the facts alleged in the complaint do not support a violation of the IPRRA. The IPRRA provides a private right of action for employees who are denied access to personnel records or whose records are divulged without written notice. *Bogosian v. Bd. of Educ. of Cmty. Unit Sch. Dist. 200*, 134 F. Supp. 2d 952, 960 (N.D. Ill. 2001). The defendants contend that the complaint lacks any allegations that Robertson was denied access to her personnel file or that her records were divulged to a third party.

The court agrees that the allegations in the complaint do not support an inference that Robertson's records were divulged without written notice. Rather, as best the court can decipher, the complaint alleges that the defendants both failed to contact DCFS about suspected abuse by Robertson when required to do so and improperly kept records identifying Robertson as the subject of an investigation by DCFS. The exhibits attached to the complaint indicate that some type of investigation of the alleged abuse occurred and that DCFS had no record of an investigation of Robertson. It is not clear how these alleged facts amount to a violation of the IPRRA.

Nor does the complaint contain allegations that Robertson was denied access to her personnel file. In her response, Robertson contends that she asked for access to her file in March 2011 and did not receive access to it until January 2012. A plaintiff "may not amend [her] complaint in [her] response brief," *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreens Co.*, 631 F.3d 436, 448 (7th Cir.2011), although she may include facts in a response brief "in order to defeat a motion to dismiss if the facts are consistent with the allegations of the complaint," *Help at Home, Inc. v. Med. Capital, L.L.C.*, 260 F.3d 748, 752-53 (7th Cir. 2001). Here, the additional facts included in Robertson's response change her theory as to how the defendants violated the IPRRA, and thus amount to an impermissible amendment of the complaint. As the First Amended Complaint does not contain facts that support an inference that the defendants violated the IPRRA, Count VI is dismissed without prejudice. Robertson may amend her complaint to make her theory as to the alleged IPRRA violation clear.

E. **Tortious Interference with Contractual Relations (Count VII) and Negligent Supervision (Count VIII)**

1. Statute of Limitations

Defendants argue that Robertson's state-law tortious interference and negligent supervision claims are barred by the one-year statute of limitations set out in the Local Governmental and Governmental Employees Tort Immunity Act ("the Tort Immunity Act"), 745 Ill. Comp. Stat. 10/1-101, *et seq.*, which bars civil actions "against a local entity or any of its employees for any injury unless . . . commenced within one year from the date that the injury was received or the cause of action accrued." 745 Ill. Comp. Stat. 10/1-101(a). There is no dispute that the Board is a "local entity" and that Lofton is its employee. According to the defendants, Robertson was informed in July 2011 that she had been removed from the roster of teachers at Senn. This was after the October 1, 2010, incident involving the student, and after

9

she was issued a warning resolution. The defendants argue that Robertson was aware of the defendants' alleged tortious conduct and her injury as of July 2011, when she was terminated. She filed an action in state court in August 2012, more than one year after her cause of action accrued.

Robertson responds to the defendants' statute of limitations defense by claiming that she did not discover the information that forms the basis of her allegations until after her dismissal, because she did not have access to her personnel file. Under Illinois law, the statute of limitations begins to run when "the injured person becomes possessed of sufficient information concerning his injury and its cause to put a reasonable person on inquiry to determine whether actionable conduct is involved." *Knox Coll. v. Celotex Corp.*, 430 N.E.2d 976, 980-81 (Ill. 1981). Robertson contends that this discovery rule should apply to her claims because she discovered her injury after her termination. She also argues that equitable tolling of the statute of limitation is appropriate in this case because she was refused access to at least some of the information that forms the basis of her claim.

The statute of limitations is an affirmative defense. "Complaints need not anticipate and plead around defenses," but a plaintiff may plead herself out of court by pleading facts that show that a defense applies. *Peterson v. McGladrey & Pullen, LLP*, 676 F.3d 594, 600 (7th Cir. 2012). *See also Hollander v. Brown*, 457 F.3d 688, 691 n.1 (7th Cir. 2006) (observing that it is "irregular" to dismiss a complaint on the basis of an affirmative defense such as the statute of limitations, unless "the plaintiff effectively pleads herself out of court by alleging facts that are sufficient to establish the defense"); *Richards v. Mitcheff*, 696 F.3d 635, 638 (7th Cir. 2012) ("Judges should respect the norm that complaints need not anticipate or meet potential affirmative defenses."). "A statute of limitations defense, while not normally part of a motion

10

under Rule 12(b)(6), is appropriate where the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense, such as when a complaint plainly reveals that an action is untimely under the governing statute of limitations." *Andonissamy v. Hewlett–Packard Co.*, 547 F.3d 841, 847 (7th Cir. 2008).

Here, the discovery rule or equitable tolling might apply to Robertson's claims, but this is impossible to determine from the face of the complaint, and Robertson was not required to plead these facts in her complaint in order to survive a motion to dismiss. *See Richards*, 696 F.3d at 638. Although the defendants argue that Robertson was on notice that her rights might have been violated at the time of her termination, and therefore had a duty to investigate her potential claims, the complaint alleges that the defendants offered Robertson a neutral explanation for the termination—a reduction in staff at Senn. Drawing all inferences in Robertson's favor, this is not a case in which the wrongfulness of the defendants' alleged conduct would have been obvious to the plaintiff at the time it occurred. *Cf. Sroga v. De Jesus*, No. 12 C 9288, 2013 WL 2422869, at *4 (N.D. Ill. June 3, 2013) ("It is beyond any reasonable dispute that when six armed police officers enter a person's home without notice or consent in the early morning, damage his property, and respond to his reasonable questions with profanity and threats to arrest him although he has done nothing wrong, that person is on notice that he has been injured."). Rather, it is plausible that Robertson was not aware of the contents of her personnel file and the impact those contents would have on her future employment prospects until well after the date of her termination. The court therefore denies the motion to dismiss based on the statute of limitations.

2. Tortious Interference with Contract (Count VII)

The defendants argue, in the alternative, that Robertson's tortious interference with contract claim fails because the only contract relevant to her claims is her employment contract

with the Board, which is a defendant in this case. The elements of a tortious interference with contract claim are:

> (1) the existence of a valid and enforceable contract between the plaintiff and another; (2) the defendant's awareness of this contractual relation; (3) the defendant's intentional and unjustified inducement of a breach of the contract; (4) a subsequent breach by the other, caused by the defendant's wrongful conduct; and (5) damages.

*HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 676 (Ill. 1989).

According to the defendants, Robertson cannot satisfy these elements because the Board could not, as a matter of law, tortiously interfere with its own contract. The court agrees. Under Illinois law, it is settled "'that a party cannot tortiously interfere with his own contract; the tortfeasor must be a third party to the contractual relationship.'" *Nation v. Am. Capital, Ltd.*, 682 F.3d 648, 652 (7th Cir. 2012) (quoting *Douglas Theater Corp. v. Chi. Title & Trust Co.*, 681 N.E.2d 564, 567 (1997)). Thus, Robertson's claim against the Board fails because it was a party to her employment contract. *See Lombardi v. Bd. of Trs. Hinsdale Sch. Dist. 86*, 463 F. Supp. 2d 867, 873 (N.D. Ill. 2006) (dismissing teacher's claim against school board because it was a party to the contract with which it allegedly tortiously interfered).

The defendants argue that Lofton likewise cannot be held liable for interference with Robertson's employment contract with the Board because she was the Board's agent. An agent of the employer is not usually considered to be a third party against whom a tortious interference with contract claim may be brought. *Stanford v. Kraft Foods, Inc.*, 88 F. Supp. 2d 854, 857 (N.D. Ill. 1999). In *Quist v. Board of Trustees of Community College District No. 525*, 629 N.E.2d 807, 811-12 (Ill. App. Ct. Feb. 16, 1994), the Illinois Appellate Court concluded that statements made by a college president that allegedly constituted tortious interference with an instructor's employment contract were made by an agent of the college, not a third party.

Similarly, in *Lombardi*, the district court dismissed a claim against individual school officials "because they were agents of the Board, and acting on its behalf." 463 F.3d at 873. The court agrees that, because Lofton was acting as an agent of the Board and not as a third party when she placed information into Robertson's personnel file that affected her contract with the Board, Count VII against Lofton must be dismissed.[2]

## G. Defamation (Count IX)

To establish defamation, Robertson must show that Lofton made a false statement about her, made an unprivileged publication of that statement to a third party, and damaged her by publishing the statement. *Solaia Tech., LLC v. Specialty Publ'g Co.*, 852 N.E.2d 825, 839 (Ill. 2006). A statement is defamatory per se if it "impute[s that] a person lacks ability or otherwise prejudices that person in her or his profession." *Id.* An allegedly defamatory remark is "published" when it is communicated to someone other than the plaintiff. *Gibson v. Philip Morris, Inc.*, 685 N.E.2d 638, 644 (Ill. 1997). To be actionable, the publication must have been "unprivileged," given the circumstances under which it was made. *Id.* at 645.

The defendants raise various affirmative defenses to the defamation claim. As noted above, a court may consider an affirmative defense on a motion to dismiss if it is clear from the complaint that the defense is meritorious.

---

[2] The court notes that the claim against Lofton may also be barred by the Tort Immunity Act, which immunizes government employees from liability for tortious conduct. In *Goldberg v. Brooks*, the Illinois Appellate Court stated that "the absolute privilege of government employees acting within the scope of their duties has been applied to virtually every common law tort," and the court refused to allow a plaintiff to amend his complaint to include a tortious interference with contract claim against a school district and its employees based on the employees' complaints about the plaintiff's job performance. 948 N.E.2d 1108, 1116 (Ill. App. Ct. 2011).

1. Statute of Limitations

Defendants argue that the defamation claim is time-barred under the Tort Immunity Act, 745 Ill. Comp. Stat. 10/8-101(a), as well as under Illinois' statute of limitations for defamation claims, 735 Ill. Comp. Stat. 5/13-201, both of which required Robertson's action to commence within one year of the date that her cause of action accrued.

As stated above, according to the defendants, Robertson was informed in July 2011 that she had been removed from the roster of teachers at Senn. No allegedly defamatory statements were made after July 2011. The defendants argue that Robertson was aware of the alleged defamation at that time but did not file an action in state court that included a claim for defamation until August 2012. Robertson responds that she did not discover the defamatory information that forms the basis of her allegations until after her dismissal from Senn, and that the discovery rule should apply because she discovered her injury at that later date. She also argues that equitable tolling is appropriate because she was refused access to information that forms the basis of her claim.

For the reasons discussed with respect to the tortious interference with contract claim, the court cannot determine from the face of Robertson's complaint whether the discovery rule or equitable tolling applies to her claims, and Robertson was not required to plead these facts in her complaint in order to survive a motion to dismiss. *See Richards*, 696 F.3d at 638. The court therefore denies the motion to dismiss Count IX based on the statute of limitations.

2. Absolute Immunity under the Tort Immunity Act

The defendants next argue that they are immunized against the defamation claim by the Tort Immunity Act, 745 Ill. Comp. Stat. 10/1-101 *et seq*. The Board, they argue, is entitled to absolute immunity from the claim under § 2-107 of the Tort Immunity Act, which states:

14

> A local public entity is not liable for injury caused by any action of its employees that is libelous or slanderous or for the provision of information either orally, in writing, by computer or any other electronic transmission, or in a book or other form of library material.

745 Ill. Comp. Stat. 10/2-107.

The court agrees with defendants that, crediting all facts pleaded by Robertson in support of her defamation claim, § 2-107 of the Tort Immunity Act entitles the Board to immunity from Robertson's defamation claim. The basis for the liability of the Board is the allegedly libelous action of its employee, Lofton, and her provision of information about Robertson to Robertson's prospective employers. As a local public entity, the Board cannot be sued for Lofton's actions. *See Horwitz v. Bd. of Educ. of Avoca Sch. Dist.*, 260 F.3d 602, 617 (7th Cir. 2001) (dismissing defamation claim against school board); *Villagrana v. Vill. of Oswego*, No. 04 C 4603, 2005 WL 2322808, at *5 (N.D. Ill. Sept. 22, 2005) (dismissing defamation claim against the Village of Oswego). Count IX against the Board is therefore dismissed with prejudice.

The defendants argue that Lofton is also immune from liability for the provision of information under § 2-210 of the Act, which states:

> A public employee acting in the scope of his employment is not liable for an injury caused by his negligent misrepresentation or the provision of information either orally, in writing, by computer or any other electronic transmission, or in a book or other form of library material.

745 Ill. Comp. Stat. 10/2–210.

The facts as pleaded by Robertson establish that Lofton was acting within the scope of her employment when the alleged defamatory statements were made or provided to third parties. Robertson does not argue otherwise; rather, she contends that Lofton acted maliciously when she took over the investigation into the alleged abuse of the student, "injected her own prejudice into the investigation, withheld information that was required to be revealed . . . , and caused

15

Robertson to be dismissed." (Pl.'s Resp. to Mot. to Dismiss 11-12, ECF No. 26.) All of these actions, even if malicious, were taken by Lofton within the scope of her duties as principal.

It follows that under the Tort Immunity Act, Lofton is not liable for providing information that was defamatory. This is true despite her allegedly malicious intent. The Illinois Appellate Court has held that "the provision of information is a separate category from negligent misrepresentation, providing a broad protection to public employees acting within the scope of their employment." *Goldberg v. Brooks*, 948 N.E.2d 1108, 1114 (Ill. App. Ct. 2011). Put another way, the limitation of immunity in § 2-210 to "*negligent* misrepresentations" does not similarly restrict the immunity that applies to "the provision of information" to negligent acts, but encompasses the malicious provision of information as well.

Drawing all inferences in favor of Robertson for purposes of the motion to dismiss, however, Robertson has alleged that Lofton injured her not only by providing information, but also by making misrepresentations about her with malicious intent. As the Tort Immunity Act protects only negligent misrepresentations, if Lofton made false statements about Robertson with malice, she would not enjoy immunity for those statements under the Act. *See Douglas*, 2013 WL 2156053, at *6 (concluding that although the defendant was not liable for the provision of information, defamatory "misrepresentations" about the plaintiff were not immunized to the extent that they were made with malice). Thus, although the defamation claim against the Board is dismissed under the Tort Immunity Act, the court cannot grant the motion to dismiss the defamation claim against Lofton on the same basis.

3. Absolute Privilege

Even if Lofton is not immune from liability for alleged misrepresentations, the defendants argue that any statements she may have made about Robertson are protected by an

16

absolute privilege. "A defamatory statement is not actionable if it is privileged; this is a question of law." *Solaia Tech., LLC*, 852 N.E.2d at 842. A government official is absolutely immune from liability for defamatory statements made within the scope of her duties. *Horwitz*, 260 F.3d at 617-18. Immunity applies when the statements were reasonably related to her official duties. *Villagrana*, 2005 WL 2322808, at *5. The privilege "cannot be 'overcome by a showing of improper motivation or knowledge of the statement's falsity, including malice.'" *Horwitz*, 260 F.3d at 618 (quoting *Klug v. Chi. Sch. Reform Bd. of Trs.*, 197 F.3d 853, 861 (7th Cir. 1999)).

The statements at issue here are privileged because—as stated above—they were made in the course of and were reasonably related to Lofton's duties as principal, which included the evaluation and discipline of teachers. *See Douglas*, 2013 WL 2156053, at *8 (dismissing defamation claim against principal and Board because statements about a teacher were made by the principal in the scope of her employment and were privileged). Nothing in the complaint supports an inference that the statements exceeded the scope of Lofton's duties or were communicated to parties outside of Lofton's capacity as principal, and Robertson makes no such argument in her response. She argues that Lofton was not acting as a mandatory reporter because she did not report the alleged abuse to DCFS and instead took charge of the investigation herself, but that has nothing to do with whether Lofton made statements within the scope of her duties as principal. *Cf. Villagrana*, 2005 WL 2322808, at *5 (denying motion to dismiss defamation claim where it was unclear from the complaint whether police officers made statements to third parties that were unrelated to their investigation of an incident). The court dismisses Count IX against Lofton without prejudice.

## IV. Conclusion

For the reasons explained above, the defendants' motion to dismiss is granted as to Counts VI (without prejudice), VII (with prejudice), and IX (with prejudice against the Board and without prejudice against Lofton). The motion to dismiss is denied as to Counts II and VIII. The claims against Lofton in her official capacity are dismissed, and Count I is dismissed against Lofton in her individual capacity. The court also dismisses Count V with prejudice. Based on Robertson's representations that she intends to file an amended complaint, the defendants' motion for a more definite statement pursuant to Rule 12(e) is denied as moot. Robertson may file a Second Amended Complaint within thirty days of the date of this order.

ENTER:

/s/
JOAN B. GOTTSCHALL
United States District Judge

DATED: October 25, 2013