# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| DEIDRE ROBERTSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 13 C 3205 |
| v. ) | |
| ) | Judge Joan B. Gottschall |
| SUSAN LOFTON and BOARD OF ) | |
| EDUCATION OF THE CITY OF CHICAGO, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

In the 2010–11 school year, plaintiff Deidre Robertson ("Robertson"), an African American high school English teacher in the Chicago Public Schools ("CPS"), was suspended twice for alleged misconduct and received the first "unsatisfactory" performance rating of her CPS career on June 2, 2011; defendant Board of Education of the City of Chicago ("the Board") issued a "warning resolution" to Robertson based on those two incidents in January 2012. *See* Resp. to JSUMF ¶¶ 4–6, 9, 10, 16, 34–37, 45–48, 49, 56, Defs.' Resp. to SAMF ¶¶ 5–6.[1] Due to declining enrollment in the Senn Achievement Academy ("Senn") where she taught (except for one class), the unsatisfactory rating led to her being laid off, along with eight other teachers, in July 2011 and transferred to the "reassigned teacher pool" ("the pool") from which she has since worked as a substitute teacher in other CPS schools. Resp. to JSUMF ¶¶ 26, 64–66, 69–70. Robertson filed suit against the Board and Senn's principal in the 2010–11 school year, Susan Lofton ("Lofton"), Resp. to JSUMF ¶ 3.

---

[1] Defendants submitted a joint Local Rule 56.1(a)(3) statement of undisputed material facts "JSUMF", ECF No. 224. As Local Rule 56.1(b)(3)(C) allows, plaintiff combined her response to the JSUMF with her Local Rule 56.1(b)(3) statement of additional material facts. ECF No. 226. Because the paragraph numbering in the combined document restarts, citations to plaintiff's responses to the JSUMF refer to the paragraphs on pages 1–15 of ECF No. 226. References to "SAF" mean the sequence of paragraphs that begins on page 15 of ECF No. 226. *See also* Resp. to SAF, ECF No. 228 (utilizing this numbering).

Lofton and the Board have filed separate motions for summary judgment. They partially incorporate each other's arguments, and they collectively seek dismissal of all thirteen counts of Robertson's Third Amended Complaint ("TAC"), ECF No. 68. Plaintiff responds by defending only two counts, her employment discrimination claims brought in Counts I and II under 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964, as amended, ("Title VII") 42 U.S.C. § 2000e–2000e-17. Primarily because Robertson has identified no similarly situated non-African American employee who received more favorable treatment, the court grants the motions for summary judgment.

## I. BACKGROUND

Except where otherwise noted, the following facts are undisputed. Robertson has worked as a CPS teacher since August 2004. Resp. to JSUMF ¶ 8. She taught English at two high schools before Senn. *Id.* ¶¶ 9–13. She transferred to Senn in the 2007–08 school year.[2] *Id.* ¶ 14. Her first principal, Richard Norman ("Norman"), rated her "satisfactory." *Id.* ¶¶ 16, 17.

Senn's campus housed three, distinct schools, Senn High School, Senn Achievement Academy, and Rickover Naval Academy; the high school and achievement academy shared Lofton as a principal in 2010–11. *See* Resp. to JSUMF ¶¶ 21–22. Carter Carey ("Carey"), a Caucasian man, served as Senn's assistant principal in the 2010–11 school year. Resp. to SAF ¶¶ 8–10.

---

[2] Defendants submit evidence of other alleged incidents earlier in Robertson's career and that during Norman's tenure, he received complaints from students and parents about Robertson stating that she used profanity in the classroom and hit students. *See* Resp. to JSUMF. ¶¶ 18–20. But, as Robertson observes, the warning resolution and suspension notices do not mention those incidents. *See* Resp. to SAF ¶ 19 (citing Defs.' Ex. O, R, S). They do not, therefore, factor into the court's summary judgment analysis.

2

"Lofton received multiple complaints from students, staff and parents regarding Plaintiff swearing in front of students (*e.g.* fuck, shit, bullshit), threatening students, having verbal confrontations with students, calling students and parents names (*e.g.* retarded, bitch, jackass, ghetto, Moby Dick great white whale), touching students, throwing a pencil and pencil box at a student, and speaking unprofessionally to students, parents and staff." Resp. to JSUMF ¶ 27 (undisputed; internal citations to exhibits omitted). Lofton received a verbal complaint from a parent about Robertson threatening a parent; after a tenured teacher and student teacher corroborated the complaint, Lofton issued Robertson a cautionary warning. *Id.* ¶¶ 28–30. As for Carey, Robertson's proposed comparator, Lofton received no complaints about him swearing in front of students or parents and no complaints about him using corporal punishment. Resp. to JSUMF ¶¶ 59–60. Carey cursed in front of students, though Robertson does not recall who was principal at the time, Robertson Dep. 404:1–405:14, and had physical contact with students, SAF ¶ 13. Robertson's unrebutted testimony is that the physical contact occurred when Carey tried to break up fighting students. Resp. to JSUMF ¶ 60 (citing Robertson Dep. 407:11–16).

**A. The "R.S. Incident"**

Robertson was involved in a physical altercation with a student, R.S., on October 1, 2010. Resp. to JSUMF ¶ 31. What happened and whether Robertson acted in self-defense is disputed. *See, e.g.*, SAF ¶¶ 24–25. One eyewitness reported not seeing Robertson come into physical contact with R.S. SAF ¶ 20. And despite the incident, R.S. remained in Robertson's class. *Id.* ¶ 21; *see also id.* ¶¶ 22–23 (stating that one incident report stated that Robertson was unprofessional with R.S.' father, but that he later wrote a letter on Robertson's behalf). Robertson also notes that an incident report stated that the Illinois Department of Children and

3

Family Services ("DCFS") would be contacted, but DCFS has no record of any contact. *See id.* ¶¶ 26–27.

A Board investigator concluded that there was credible evidence Robertson grabbed R.S.'s right arm hard enough to cause abrasions. Resp. to JSUMF ¶ 32. Following the Board's recommendation, Lofton suspended Robertson for fifteen days for use of corporal punishment. *Id.* ¶ 34. Robertson followed the appeal process, and after a hearing, the Board reduced the length of her suspension to ten days. *See id.* ¶¶ 35–37.

**B. The May 2011 Incident and the Warning Resolution**

In May 2011, a student complained to Lofton that Robertson was dropping f-bombs in class. Resp. to JSUMF ¶ 38. Lofton went to Robertson's classroom and brought all of the students in the front row back to "the office." *Id.* ¶ 39. Lofton asked the students to write something about the incident, though whether she told them to write what happened or "something bad" about Robertson, as one student reported, is disputed. *See id.* ¶ 40 and material cited; *see also id.* ¶¶ 41–42 (factual disputes over whether Lofton left the room and whether students were told not to talk among themselves). Keeping these disputes in mind, each student wrote that Robertson had said "fuck" in class. *Id.* ¶ 43. Again, Robertson disputes this. In addition to disputing what Lofton told the students, Robertson asserts that there are discrepancies in the letters' accounts of what happened. Resp. to SAF ¶ 30.

After giving Robertson a chance to tell her side of the story, Resp. to JSUMF ¶ 44, Lofton suspended Robertson for three days for using profanity, *id.* ¶ 45. Robertson appealed; the Board held a hearing and upheld the suspension. *Id.* ¶¶ 46–48. Citing the R.S. incident and the May 2011 incident, the Board issued a resolution warning Robertson about her conduct ("warning

4

resolution") on January 25, 2012. *Id.* ¶ 49 (citing Ex. A Lofton Dep., Ex. S Jan. 25, 2012 Warning Resolution).

**C. Robertson's 2010–11 Performance Evaluation**

In the 2010–11 school year, the Board used a four-level evaluation system under which teachers received a rating of superior, excellent, satisfactory, or unsatisfactory.[3] Resp. to JSUMF ¶ 50. As required by Board policy and the applicable union contract, Lofton and Carey observed Robertson three times during the school year. Resp. to JSUMF ¶ 51.

Assistant Principal Carey observed Robertson on December 2, 2010. *Id.* ¶ 52. His notes identify her weaknesses as interactions with students, completion of lesson plans, consistent student assessment, and recording student grades. *Id.* (citing Ex. T at 001732). Lofton observed Robertson teach on April 26, 2011. *Id.* ¶ 53. She noted these weaknesses: "not writing her own lesson plans, actual lesson was disjointed, nonfiction graded reading strategies not evident, mistakes in vocabulary and parts of speech, low rigor, reliance on literal level items, and the class did not start on time." *Id.* citing (Ex. B ¶ 23; Ex. U at 001723). Lofton noted similar weaknesses after the third observation on May 31, 2011. *See id.* ¶ 54.

Based on those observations, Lofton rated Robertson "unsatisfactory" on June 2, 2011. *Id.* ¶ 56. Robertson disagreed and refused to sign the performance review. SAF ¶ 3.

Due to projected under enrollment, about nine Senn teachers lost their jobs in layoffs at the end of the 2010–11 school year. Resp. to JSUMF ¶ 62. Under Board policy, an "unsatisfactory" rating is used as a factor when deciding which teachers to lay off. *Id.* ¶ 63. Robertson "was one of the teachers laid off based on her 'Unsatisfactory' rating," *id.* ¶ 64, after

---

[3] The record does not make clear whether the Board used the same system in prior years, though the fact is immaterial.

5

which she was put in the pool and worked as a substitute in subsequent years. *See id.* ¶¶ 65–66, 69–70 (stating that Robertson worked every school day from the beginning of the 2012–13 school year through the end of the 2014–15 school year).

**D. Lofton's Treatment of Other Teachers**

Defendants submit undisputed evidence of Lofton's conduct toward other teachers in the 2010–11 school year. Lofton rated four other Senn teachers unsatisfactory that year. Resp. to JSUMF ¶ 61. The other four were white. *Id.*

Lofton suspended a white teacher and requested a warning resolution when students were chemically burned during a class. Resp. to JSUMF ¶ 57. Lofton did the same thing to a white teacher who brought pornography to class. *Id.* ¶ 58.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In resolving summary judgment motions, "facts must be viewed in the light most favorable to," and all reasonable inferences from that evidence must be drawn in favor of, the nonmoving party–but "only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Blasius v. Angel Auto., Inc.*, 839 F.3d 639, 644 (7th Cir. 2016) (citing *Cairel v. Alderden*, 821 F.3d 823, 830 (7th Cir. 2016)).

The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Modrowski v. Pigatto*, 712 F.3d 1166, 1168 (7th Cir. 2013) (explaining that Rule 56 "imposes an

initial burden of production on the party moving for summary judgment to inform the district court why a trial is not necessary" (citation omitted)). After "a properly supported motion for summary judgment is made, the adverse party must" go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 255 (quotation omitted); *see also Modrowski*, 712 F.3d at 1169 (stating party opposing summary judgment "must go beyond the pleadings (*e.g.,* produce affidavits, depositions, answers to interrogatories, or admissions on file), to demonstrate that there is evidence upon which a jury could properly proceed to find a verdict in her favor") (citations and quotations omitted). Summary judgment is warranted when the nonmoving party cannot establish an essential element of her case on which she will bear the burden of proof at trial. *Kidwell v. Eisenhauer*, 679 F.3d 957, 964 (7th Cir. 2012).

## III. DISCRIMINATION CLAIMS

Robertson pleads Title VII and § 1981 claims for race discrimination claims in Counts I and II respectively. Robertson and defendants proceed under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). In 2016, the Seventh Circuit did away with the distinction between "direct" and "indirect" methods of proving intentional discrimination. *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765–66 (7th Cir. 2016). But the Seventh Circuit took care to stress that its decision did "not concern *McDonnell Douglas* or any other burden-shifting framework, no matter what it is called as a shorthand." *Id.* at 766 ("[A]ll evidence belongs in a single pile and must be evaluated as a whole. That conclusion is consistent with *McDonnell Douglas* and its successors."); *see also Golla v. Office of Chief Judge of Cook Cnty.*, 875 F.3d 404, 407 (7th Cir. 2017) (quoting *David v. Bd. of Trs. of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 224 (7th Cir. 2017)) (explaining that after *Ortiz*, the framework remains "a

7

means of organizing, presenting, and assessing circumstantial evidence in frequently recurring factual patterns found in discrimination cases").

Furthermore, the parties agree that the *McDonnell Douglas* framework applies to Robertson's Title VII and § 1981 claims. *See, e.g.*, *Riley v. Elkhart Cmty. Schs.*, 829 F.3d 886, 892 (7th Cir. 2016); *Hartzol v. McDonald's Corp.*, 437 F. Supp. 2d 805, 814 (N.D. Ill. 2006).

Though the court employs the *McDonnell Douglas* framework because the parties do, it remains mindful that the overarching question "is simply whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action." *Ortiz*, 834 F.3d at 765. The framework has three steps. The following concisely describes them:

> Generally speaking, under *McDonnell Douglas*, the plaintiff has the initial burden of establishing that "(1) she is a member of a protected class, (2) she performed reasonably on the job in accord with her employer['s] legitimate expectations, (3) despite her reasonable performance, she was subjected to an adverse employment action, and (4) similarly situated employees outside of her protected class were treated more favorably by the employer." *Andrews v. CBOCS West, Inc.*, 743 F.3d 230, 234 (7th Cir. 2014) (internal quotation marks omitted), *overruled on other grounds by Ortiz*, 834 F.3d at 765. "If the plaintiff satisfies that burden, then the employer must articulate a legitimate, nondiscriminatory reason for the adverse employment action, at which point the burden shifts back to the plaintiff to submit evidence that the employer's explanation is pretextual." *Id.*

*David*, 846 F.3d at 225 (alteration in original).

The first component of Robertson's prima facie case is not in dispute. Defendants do not dispute that Robertson, an African American woman, is a member of a protected group. Resp. to SAF ¶ 1. Robertson has not, however, presented sufficient evidence on a portion of the second factor, and the evidence she points to does not adequately establish that a similarly situated non-African American individual was treated more favorably than she was.

8

**A. Meeting the Employer's Legitimate Expectations**

Robertson points to relatively little evidence to show that she met her employer's legitimate expectations. *See* Resp. to Mot. Summ. J. 7. She cites: (1) her charge of discrimination filed with the Equal Employment Opportunity Commission ("EEOC") which so recites, SAF ¶ 2 (citing Pl.'s Ex. 2 at 1); and (2) undisputed evidence that she refused to sign Lofton's June 2, 2011, evaluation, SAF ¶ 3.

Even seen favorably to Robertson, this evidence amounts to her opinion of her own performance. A plaintiff's "own opinion about his work performance is irrelevant" and doesn't create a fact issue. *Sklyarsky v. Means-Knaus Partners, L.P.*, 777 F.3d 892, 897 (7th Cir. 2015) (citing *Sublett v. John Wiley & Sons, Inc.*, 463 F.3d 731, 740 (7th Cir. 2006) and *Peele v. Country Mut. Ins. Co.*, 288 F.3d 319, 329 (7th Cir. 2002)) (affirming summary judgment for employer). Robertson therefore fails to create a fact issue on the second *McDonnell Douglas* factor to the extent she attacks Lofton's assessment of her job performance. *See, e.g.*, *Kralka v. Bd. of Trs. of Cmty. Coll. Dist. No. 508*, 75 F. Supp. 3d 909, 914–15 (N.D. Ill. 2014) (holding teacher failed to create fact issue on whether she was meeting employer's legitimate expectations).

But Robertson's briefing can be read as raising the distinct claim that her employer applied its legitimate expectations in a discriminatory way. The Seventh Circuit has held that "where the issue is whether the plaintiff was singled out for discipline based on a prohibited factor, it 'makes little sense . . . to discuss whether she was meeting her employer's reasonable expectations.'" *Curry v. Menard, Inc.*, 270 F.3d 473, 477–78 (7th Cir. 2001) (quoting *Flores v. Preferred Technical Grp.*, 182 F.3d 512, 515 (7th Cir. 1999)) (alteration in original). Stated more generally, "[w]hen a plaintiff produces evidence sufficient to raise an inference that the employer applied its legitimate expectations in a disparate manner, the second and fourth prongs of

9

*McDonnell Douglas* merge, allowing the plaintiff to establish a prima facie case by establishing that similarly situated employees were treated more favorably." *Taylor-Novotny v. Health Alliance Med. Plans, Inc.*, 772 F.3d 478, 492 (7th Cir. 2014) (quoting *Grayson v. O'Neill*, 308 F.3d 808, 818 (7th Cir. 2002)). Robertson does not concede that the facts of the R.S. incident and the May 2011 incident are as defendants claim. *See* Resp. to Mot. Summ. J. 13–14. Nevertheless, the thrust of her argument is that in the face of evidence that was "inconclusive" and contradictory, Lofton and other Board employees disciplined and evaluated her more harshly than other employees due to her race. *See id.* Given the weight Lofton's subjective judgment carried in Robertson's evaluation and the disciplinary decisions, the legitimate expectations prong merges with the fourth *McDonnell Douglas* factor for Robertson because Lofton made those decisions. *See Taylor-Novotny*, 772 F.3d at 491–92; *Oest v. Ill. Dep't of Corr.*, 240 F.3d 605, 612 n. 3 (7th Cir. 2001), *overruled on other grounds by Ortiz*, 834 F.3d 760 (holding plaintiff didn't have to prove she was meeting employer's legitimate expectations because the "people judging [the plaintiff's] performance were the same she accused of discriminating against her" (citing *Flores*, 182 F.3d at 515)); *Kralka*, 75 F. Supp. 3d at 915 (same as in *Taylor-Novotny*).

**B. Similarly Situated Employee Treated More Favorably**

The fourth factor in the *McDonnell Douglas prima facie* case requires the plaintiff to come forward with enough evidence to permit a jury to conclude that "similarly situated employees outside of her protected class were treated more favorably by the employer." *Andrews*, 743 F.3d at 235 (quoting *Ptasnik v. St. Joseph Hosp.*, 464 F.3d 691, 696 (7th Cir. 2006)). "[W]hile 'they need not be identical in every conceivable way,' similarly situated employees 'must be directly comparable to the plaintiff in all material respects.'" *Skiba v. Ill.*

10

*Cent. R.R. Co.*, 884 F.3d 708, 723 (7th Cir. 2018) (quoting *Coleman v. Donahoe*, 667 F.3d 835, 846 (7th Cir. 2012)). The number of relevant factors needed to make two employees comparable "depends on the context of the case." *Id.* (quoting *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617 (7th Cir. 2000)), *overruled on other grounds by Ortiz*, 834 F.3d 760). "In the usual case a plaintiff must at least show that the comparators (1) dealt with the same supervisor, (2) were subject to the same standards, and (3) engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Id.* (quoting *Coleman*, 667 F.3d at 847) (internal alteration and quotations omitted).

Robertson puts forward one comparator: Carey. Resp. to Mot. Sum. J. 9. Carey, a white male, worked with Lofton in his role as Senn's assistant principal in the 2010–11 schoolyear. *See* Resp. to SAF ¶¶ 8–11. Since Robertson and Carey reported to Lofton, the fact that Carey supervised Robertson does not, as defendants suggest, prove dispositive of all of her claims. It might when comparing applicants for a job because supervisors often have greater experience than their subordinates. *See Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 680 (7th Cir. 2002). In this disparate discipline case, Robertson and Carey "dealt with the same supervisor" (Lofton) and, with inferences favorable to Robertson, "were subject to the same standards" when it came to physical contact with students and cursing in their presence. *Skiba*, 884 F.3d at 723 (quoting *Coleman*, 667 F.3d at 847).

That does not hold for Lofton's assessment of Robertson's teaching, however. On that score, Carey sat in on Robertson's classroom evaluations, but there is no evidence that Carey taught that year or that Lofton evaluated his teaching. *See* Resp. to JSUMF ¶¶ 51, 52; *see also id.* ¶ 61 (Lofton rated a total of five Senn teachers unsatisfactory in the 2010–11 school year).

11

Hence Carey cannot be a similarly situated comparator for Lofton's unsatisfactory rating of Robertson. *See Patterson*, 281 F.3d at 680.

Robertson points to evidence that Carey cursed in the presence of students, SAF ¶ 12, but as defendants point out, the evidence shows neither that it happened in Lofton's presence nor that she was informed of it. *See* Robertson Dep., ECF No. 224-2 Ex. C 404:1–05:14; Resp. to JSUMF ¶ 59 (undisputed that Lofton received no complaints that Carey used vulgar language in front of students or parents). Carey also had physical contact with Senn students. SAF ¶ 13. Indeed, it is undisputed that "Lofton also never received complaints that Carey . . . used corporal punishment on a student or was involved in an altercation with a student which resulted in injury to the student." Resp. to JSUMF ¶ 60 (citation omitted). And Robertson's testimony that the only physical contact between Carey and Senn students "she was aware of occurred when Carey . . . was attempting to intervene when students were fighting" stands uncontradicted and undisputed on this record. *Id.* (citing Robertson Dep. 407:11–16).

Even taking all that evidence in the light most favorable to Robertson, it does not create a fact issue on whether Carey is similarly situated to her. Since this is a disparate discipline case, the court evaluates whether Carey "'engaged in comparable rule or policy violations' and received more lenient discipline." *Coleman*, 667 F.3d at 850 (quoting *Naik v. Boehringer Ingelheim Pharms., Inc.*, 627 F.3d 596, 600 (7th Cir. 2010)). *Preddie v. Bartholomew Consolidated School Corp.*, 799 F.3d 806 (7th Cir. 2015), is illustrative. In *Preddie*, the Seventh Circuit affirmed entry of summary judgment dismissing a teacher's race-discrimination claims brought after his school district did not renew his contract at the end of the 2010–11 school year. *Id.* at 808, 816. The teacher, an African American man, who had been absent twenty-three times that year due to his and his son's medical issues, *see id.* at 808, pointed to evidence that white

teachers were not terminated despite their medical-related absences. *See id.* at 815–16. The Seventh Circuit explained that the evidence the teacher cited did not make "clear . . . whether the comparator teachers had similar performance records" stretching back as far as the plaintiff's. *Id.* at 816. Robertson's evidence suffers from a similar lack of clarity. The undisputed evidence ultimately does not show more than that Carey swore in students' presence and had physical contact with students but that Lofton received no complaints about it. SAF ¶¶ 12–13; Resp. to JSUMF ¶¶ 59–60. Given the specificity in the record about the R.S. incident and the May 2011 incident, Robertson has not provided enough information to make clear that Carey engaged in substantially comparable rule or policy violations. *See Preddie*, 799 F.3d at 816. Accordingly, like the claims in *Preddie*, Robertson's discrimination claims must be dismissed. *See id.*; *see also Kralka*, 75 F. Supp. 3d at 915–16 (granting summary judgment to school because "[t]hese teachers' minimal (less than fifteen minutes) and infrequent tardiness is easily distinguishable from Plaintiff's routine tardiness of one hour"); *Hopkins v. Bd. of Educ. of City of Chi.*, 73 F. Supp. 3d 974, 992–93 (N.D. Ill. 2014) (holding CPS teacher accused of using corporal punishment identified no comparator in part because she "cannot point to the investigation itself as being motivated by retaliation [and] because she cannot identify similar complaints about other teachers. [The plaintiff] was the subject of far more parent complaints than any other teacher, so she cannot identify similarly situated teachers who were not investigated").

## IV. COUNTS III–XIII

There remain defendants' requests for summary judgment on the other eleven counts pleaded in the TAC. Robertson does not discuss these counts in her response to defendants' motions for summary judgment, and she twice states that she opposes summary judgment "as to all counts related to employment discrimination." ECF No. 225 at 1, 15; *see also id.* at 6.

Nonetheless, defendants cannot win summary judgment by default. *Gerhartz v. Richert*, 779 F.3d 682, 686 (7th Cir. 2015); *Tobey v. Extel/Jwp Inc.*, 985 F.2d 330, 332 (7th Cir. 1993). This court must still "ascertain that judgment is proper as a matter of governing law." *Gerhartz*, 779 F.3d at 686 (quoting *Johnson v. Gudmundsson*, 35 F.3d 1104, 1112 (7th Cir. 1994)) (alteration omitted). Robertson responded timely to defendants' Local Rule 56.1(a)(3) statement of undisputed material facts, so her partial failure to engage with defendants' legal arguments means that she cannot "elaborate on the legal theories presented in [her] complaint, or . . . raise any new [legal theories] . . . ." *Johnson*, 35 F.3d at 1112 (citation omitted). The court continues to view all facts in the light most favorable to Robertson and draw reasonable inferences in her favor. *Perez v. Super Maid, LLC*, 55 F. Supp. 3d 1065, 1071 (N.D. Ill. 2014) (citing *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 844 (7th Cir. 2012)). As the following paragraphs discuss, Robertson's failure to include evidence material to some of these counts proves dispositive.

The court dismissed several of the claims (with and without prejudice) pleaded in Robertson's first amended complaint ("FAC") in its order entered October 25, 2013. *Robertson v. Lofton*, No. 13 C 3205, 2013 WL 5796780, *motion for reconsideration granted in part*, ECF No. 41 (N.D. Ill. Dec. 20, 2013). Robertson repleaded the dismissed counts in the TAC, noting the ones the court had dismissed with prejudice. The court now considers the claims it has not already dismissed.

Robertson pleads a claim for a violation of her right to procedural due process in Count III. The procedural component of due process requires "a deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.'" *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950)). Robertson's layoff did not deprive

14

her of a property interest recognized by the Fourteenth Amendment. *Price v. Bd. of Educ. of City of Chi.*, 755 F.3d 605, 610 (7th Cir. 2014) (holding that "tenured teachers no longer have a property interest in their jobs that allows them to seek and fill any vacancies" anywhere in the system). And government defamation, without more, does not implicate a liberty interest. *Khan v. Bland*, 630 F.3d 519, 534 (7th Cir. 2010). Assuming, without deciding, that Robertson's suspensions and the warning resolution deprived her of property, the undisputed facts establish that she received notice of the disciplinary actions taken against her and an opportunity to be heard through the Board's multi-level appeal process and that Lofton and Carey discussed their classroom observations with Robertson. *See* Resp. to JSUMF ¶¶ 35–37, 44, 46–48, 55; SAF ¶ 3. Given Robertson's failure to articulate at summary judgment how the notice and hearing was insufficient, Count III is dismissed. *See Bartlett v. City of Chi. Sch. Dist. #299*, 40 F. Supp. 3d 959, 965 (N.D. Ill. 2014), *appeal docketed* No. 14-1942 (7th Cir. Apr. 28, 2014) (citing *Loudermill*, 470 U.S. at 546).

Robertson pleads a claim for a deprivation of substantive due process in Count IV. She premises this claim on her alleged "liberty interest and property interest in her employment as a teacher." TAC ¶ 145. Robertson offers no argument to distinguish *Price* however. *See also Fennerty v. Board of Educ. of City of Chi.*, 577 F. App'x 599, 599–600 (7th Cir. 2014). Count IV must accordingly be dismissed.

Next are Robertson's conspiracy claims under state and federal law pleaded in Count V. Robertson has identified no evidence from which the existence of a conspiratorial agreement can be inferred, and nothing leaps from the parties' Local Rule 56.1 Statements. Robertson has therefore failed to carry her summary judgment burden on Count V. *See, e.g.*, *Amundsen v. Chi. Park Dist.*, 218 F.3d 712, 718 (7th Cir. 2000). In any event, because the underlying claims will

be dismissed, the conspiracy claims must suffer the same fate. *See, e.g.*, *Forgue v. City of Chi.*, 873 F.3d 962, 970 (7th Cir. 2017).

In Counts VI and VII Robertson brings claims under the Illinois Personnel Records Review Act ("IPRRA"), 820 Ill. Comp. Stat. 40/13. These counts concern Robertson's alleged efforts to obtain a complete copy of her personnel records from defendants and to expunge allegations of child abuse from Board records. *See* TAC ¶¶ 158–70, 171–76. *See Bogosian v. Bd. of Educ. of Cmty. Unit Sch. Dist. 200*, 134 F. Supp. 2d 952, 960 (N.D. Ill. 2001). Robertson puts forward no evidence to support the factual allegations made in the TAC at summary judgment, and so Counts VI and VII must be dismissed. *See Celotex*, 477 U.S. at 324.

The court can treat Counts VIII and X, both brought against Lofton, together. Count VIII asserts a claim against Lofton for tortious interference with contract, and Count X claims that Lofton defamed Robertson. Lofton claims, as she has before, that the Tort Immunity Act, 745 Ill. Comp. Stat. 10/1–101 *et seq.*, bars both claims. The Tort Immunity Act says that:

> A public employee acting in the scope of his employment is not liable for an injury caused by his negligent misrepresentation or the provision of information either orally, in writing, by computer or any other electronic transmission, or in a book or other form of library material.

745 Ill. Comp. Stat. 10/2–210. It is undisputed here that Lofton acted in the scope of her employment at all relevant times. This court refused to dismiss Robertson's defamation claim with prejudice at the pleading stage because it was possible that Robertson could show that Lofton acted maliciously, not just negligently. *Robertson*, 2013 WL 5796780, at *7–8 (citing *Douglas v. Lofton*, No. 12 C 8592, 2013 WL 2156053, at *6 (N.D. Ill. May 17, 2013)). But at summary judgment Robertson points to no evidence to support her theory of malice. In any event, even if she could show malice, which she has not, it is not clear that such evidence could

16

even help her. *See id.* at *9 (explaining that even a showing of malice does not overcome the absolute privilege for statements made in the course of a government official's duties).

This brings the court to the claim that the Board negligently supervised Lofton in Count IX. To defeat summary judgment, Robertson must come forward with evidence that: "(1) the defendant-employer knew or should have known that an employee had a particular unfitness for his position so as to create a danger of harm to third persons; (2) that such particular unfitness was known or should have been known at the time of the hiring, retention, or failure to supervise; and (3) that this particular unfitness proximately caused the plaintiff's injury." *Anicich v. Home Depot U.S.A., Inc.*, 852 F.3d 643, 649 (7th Cir. 2017) (citing *Van Horne v. Muller*, 705 N.E.2d 898, 904 (Ill. 1998) and *Platson v. NSM, Am., Inc.*, 748 N.E.2d 1278, 1284 (Ill. App. Ct. 2001)). The third element requires a showing that "the employee's particular unfitness 'rendered the plaintiff's injury foreseeable to a person of ordinary prudence in the employer's position.'" *Id.* (quoting *Platson*, 748 N.E.2d at 1284). Robertson does not say what made Lofton particularly unfit in the TAC or in her response to the instant motions much less point to evidence from which board employees could have learned that she was particularly unfit. *Cf. Platson*, 748 N.E.2d at 1285 (holding that allegations that supervisor witnessed a man inappropriately touching a 16-year-old intern stated a negligent supervision claim). Because Robertson failed to carry her summary judgment burden, Count IX is dismissed.

The same fate befalls Robertson's breach-of-contract claim in Count XI. Robertson pleaded that after she was placed in the pool, she learned from a principal that a "do not hire" notation appeared on her personnel file. TAC ¶¶ 200–04. Robertson does not go beyond the pleadings, *Celotex*, 477 U.S. at 324, and point to competent evidence from which a jury could find for her. She identifies nothing proving that she had a contract with the Board once she was

placed in the pool. Moreover, the undisputed evidence shows that she worked for two-week stints in the 2011–12 school year and worked each school day in the following years until the end of the 2014–15 school year. *See* Resp. to JSUMF ¶¶ 69–70. The court dismisses Count XI.

That leaves Robertson's mandamus claim in Count XII and her request for a declaratory judgment in Count XIII. Robertson's mandamus claim fails because she premises it on the violations of law the court has dismissed. *See* TAC ¶ 207 (seeking mandamus for the reasons "alleged above"); *In re Ford Motor Co., Bridgestone/Firestone N. Am. Tire, LLC*, 344 F.3d 648, 651 (7th Cir. 2003) (explaining that mandamus lies, *inter alia*, when the complained of action "so far exceed[s] the proper bounds of . . . discretion as to be legitimately considered usurpative in character, or in violation of a clear and indisputable legal right, or, at the very least, patently erroneous" (first alteration in original)). The request for declaratory relief to the same effect in Count XIII fails for the same reason: Robertson has failed to create a fact issue on any violation of law.

## V. CONCLUSION

For the reasons stated, defendants' motions for summary judgment, ECF Nos. 220, 222, are granted.

ENTER ORDER:

Dated: March 30, 2018                   /s/
                                        Joan B. Gottschall
                                        United States District Judge